# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **LISA PHILLIPS,** | ) | **CASE NO.1:23CV1482** |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| | ) | **OPINION AND ORDER** |
| **DEPUTY DONALD CANTWELL,** | ) | |
| **ET AL.,** | ) | |
| | ) | |
| **Defendants**. | ) | |

## CHRISTOPHER A.  BOYKO, J:

This matter is before the Court on Defendants' Deputy Donald Cantwell ("Cantwell"), the

Lorain County Sheriff's Office ("LCSO") and Heather Ables, RN ("Ables") Motion for

Summary Judgment.  (ECF # 33).  For the following reasons, the Court grants Defendants'

Motion on all Plaintiff's claims asserted against the LCSO and Ables.  The Court further grants

Defendants' Motion on all Plaintiff's claims against Cantwell with the exception of Plaintiff's

Excessive Force claim under the Fourteenth Amendment in his individual capacity and Plaintiff's

Assault and Battery claim under Ohio law.

## Background Facts

Plaintiff, her son and a friend left Boomer's Bar in Elyria, Ohio in the early hours of

August 7, 2021.  Plaintiff had been drinking and her son Mason was her designated driver.

Mason made a 9-1-1 call to the Elyria Police Department because he had taken his mother's car

keys but she had taken his so he was unable to drive her home and asked for assistance from the police.  Mason told Elyria police his mother was walking near the Elyria library.  Upon arrival at the location, Plaintiff was stopped by Officer Ian Baker of the Elyria Police Department.  Baker was subsequently joined by Officer T.  Loesch, also an Elyria police officer.  Plaintiff was uncooperative and admitted to being intoxicated.  ( ECF # 29-1 pg 14).  Officers encouraged her to drive home with Mason but Plaintiff argued that Mason had also been drinking and she did not want to get in the car with him.  (*Id* at pg. 36).  After discussions with Plaintiff and her son, the officers placed Plaintiff under arrest for Disorderly Conduct-Intoxicated pursuant to O.R.C. § 2917.11(B), which is a minor misdemeanor.  Officers transported Plaintiff to the Lorain County Jail where she was incarcerated on August 7th, a Saturday, and was released the next day after her son paid her $230 bail.  Plaintiff has subsequently dismissed from her suit all the Elyria Defendants and none of the remaining Defendants played a role in Plaintiff's arrest or transport to the Lorain County Jail.

Upon arriving at the jail, Plaintiff was still intoxicated and was uncooperative.  She refused to walk through the body scanner and refused to allow staff to weigh her.  Staff placed her in a holding cell with bedding materials where she slept for several hours.  Defendants Cantwell and Ables were on duty on August 7th.  Plaintiff refused to answer many of the medical screening questions asked by Ables.  Sgt. Ryan Frizzell, the officer-in-charge for the shift, told Plaintiff that she did not have to provide her weight but she did have to sign the inmate behavior/suicide contract indicating she was not suicidal.  Plaintiff complied and signed the contract.  (*Id* at pg 128).

An hour later, Ables and Cantwell again tried to get Plaintiff to complete the medical

2

screening, including taking Plaintiff's weight, but Plaintiff again refused.  Ables told Plaintiff to return to her cell.  When she returned to her cell Cantwell followed Plaintiff.   The parties dispute whether Cantwell asked Plaintiff for the bedding she had in her cell or simply took it while Plaintiff sat upon it.  The incident in question was captured on the jail's video system.  A review of the video shows that at 11:18:33 am on August 7, 2021, Plaintiff returns to her cell and sits down on the bedding after refusing to stand on the scale for Ables.   Cantwell follows Plaintiff into her cell and begins to pull the mattress and blanket off the bedding while Plaintiff is seated upon it at 11:38:37-38.   The action causes Plaintiff to roll/flip on to her back and shoulder. Cantwell drags the mattress and blanket out into the hall.  When he returns for the plastic "boat" which held the mattress and blanket, Plaintiff stands up and grabs her right shoulder as the boat is removed.   There is no audio accompanying the video.

Plaintiff complained of pain in her shoulder from Cantwell's forcible removal of the bedding.  When Ables returned to Plaintiff's cell a few minutes after the incident,  Plaintiff requested she look at her shoulder as she was concerned it was broken or dislocated.  Ables was accompanied by a male Deputy for security.  Ables told Plaintiff to lower her shirt so Ables could evaluate the shoulder but Plaintiff refused to do so with the male officer present.  Ables then informed Plaintiff she could take her to a more private location for evaluation but first Plaintiff needed to provide information on the Medical Consent For Treatment form.  Once Plaintiff agreed and completed the form, absent information about her weight, Plaintiff was transported to the jail dispensary where Ables was able to observe Plaintiff's shoulder.  Based on her assessment, Ables determined Plaintiff's shoulder was not broken nor dislocated.  Ables ordered an x-ray to confirm her physical assessment.  The x-ray confirmed the shoulder was not

3

broken nor dislocated. Ables recommended therapy and a pain reliever but Plaintiff refused to consent. Shortly thereafter Plaintiff was released after posting bond.

Plaintiff made a formal complaint with the Lorain County Sheriff's Office about Deputy Cantwell's conduct and a subsequent investigation resulted in no criminal charges against Cantwell but he was determined to have violated LCSO policy when he forcibly removed the bedding materials while Plaintiff sat on top of them. Cantwell's violation was determined to be a Minor Offense and he received a written record of instruction and caution.

Subsequently, Plaintiff was found guilty of Disorderly Conduct and had to pay a fine and court costs exceeding $300. In July of 2023 she filed this suit. In August of 2024, the parties stipulated to the dismissal of the Elyria Defendants, including the Elyria Police Department, Officer Baker and Officer Loesch, without prejudice.

**Defendants' Motion for Summary Judgment**

Defendants Cantwell, Ables and the LCSO move for summary judgment under Rule 56 and for dismissal under Rule 41(b). Defendants allege dismissal is warranted under Fed. R. Civ. P. 41(b) because Plaintiff has failed to prosecute her claims. Defendants claim Plaintiff has failed to schedule any depositions, issue any written discovery or engage in any discovery that would further her claims. Without such discovery, Defendants contend Plaintiff cannot meet her burden of proof on any of her claims

Furthermore, Defendants assert they are entitled to summary judgment because Plaintiff cannot meet her burden to show she suffered a constitutional violation and Defendants Cantwell and Ables are entitled to qualified immunity. Plaintiff cannot show that Cantwell used excessive force under the Eighth Amendment because he did not cause Plaintiff "unnecessary and wanton"

4

pain.  Nor did he act maliciously and sadistically.  Cantwell did not physically touch Plaintiff, her shoulder injury was not severe and she rejected pain medication and follow up treatment while in the jail.  Cantwell did not act maliciously nor sadistically but instead took her bedding in order to gain her compliance with the medical intake evaluation.

Nor did Ables conduct rise to the level of an Eighth Amendment violation.  Ables is not trained, qualified or authorized to intervene in a use of force situation between an officer and a detainee.  Therefore, she could not be liable under a failure to intervene theory.

Defendants further contend they cannot be found liable for unlawfully seizing Plaintiff in violation of the Fourth Amendment because the Supreme Court has held a person may be detained before a determination has been made as to their guilt or innocence.  Defendants were lawfully permitted to rely on the information supplied them by the arresting officers of the Elyria police.  No Defendant had access to any information that would reasonably require them to doubt the basis for Plaintiff's arrest.  In fact, Plaintiff admits she was intoxicated when she was arrested and refused to go in the car with her son.

Ables' medical questions to Plaintiff were also merely standardized questions necessary for the proper housing and care of detainees.  In fact, some are required under the Prison Rape Elimination Act and were not targeted at her in order to humiliate or target Plaintiff.

According to Defendants, there is no *Monell* liability as well because there is no underlying constitutional violation, nor is there *Monell* liability based solely upon a respondeat superior theory.  Moreover, Plaintiff has not articulated a policy, custom or some prior pattern of misconduct that was the driving force behind the alleged constitutional violation or some prior incident that would have put Defendant LSCO on notice that a policy or custom fails to conform

5

to constitutional requirements.  Plaintiff has not established a failure to train or supervise claim when all she can assert is a single purported constitutional violation.  Finally, in the absence of any discovery, she cannot meet her burden to support any *Monell* claim against LCSO.

Defendants move for summary judgment on Plaintiff's state law claims contending she cannot show any evidence that Cantwell or Ables intended to harm her and they are entitled to immunity both in their official and individual capacities in the absence of any evidence of malice or bad faith.

**Plaintiff's Opposition**

Plaintiff opposes Defendants' motion for dismissal for lack of prosecution arguing that her decision not to pursue discovery was a tactical decision not to divulge questions to key Defendant witnesses prior to trial.  It was also unnecessary as facts are not largely in dispute where a video captured the event in question.  Moreover, Plaintiff cooperated with Defendants' discovery requests and appeared for deposition.   Dismissal is further unwarranted because Defendants cannot show Plaintiff's failure to propound discovery was due to bad faith, willfulness or fault.   Plaintiff has cooperated with all phases of discovery, providing initial disclosures, participating in the parties' Rule 26 planning meeting, responding to Defendants' discovery requests and submitting to a deposition.

Furthermore, Defendants cannot show prejudice because they were able to acquire all the discovery they requested.  Defendants did not file a motion to compel and have not complained during the course of discovery that they were denied essential discovery.  Fed R. Civ. P. 26 contains permissive, not compulsory discovery language.  "Parties may obtain discovery regarding any nonprivileged matter..."   Plaintiff further asserts that there must be some type of

warning given to Plaintiff before the harsh sanction of an involuntary dismissal is entered.  Here, Defendants did not complain about discovery until this Motion.  Thus, Plaintiff has had no notice that her claims may be dismissed for lack of discovery.

Lastly, courts must first consider if some lesser sanction was warranted before exercising the nuclear option of dismissal.  Because Defendants did not complain or seek a sanction during discovery, Plaintiff argues this factor further militates against dismissal.

Plaintiff also contends that genuine issues of fact warrant denial of Defendants' Motion. Plaintiff asserts her Due Process rights under the Fourteenth Amendment were violated when Cantwell forcibly removed her bedding, causing her injury.  Plaintiff argues that the objective evidence supports her claim and Defendants cannot show a legitimate governmental objective that supports Cantwell's actions.  Cantwell's actions were not objectively reasonable.  In addition, Defendants arguments are limited to the Eighth Amendment but they raise no arguments attacking her Fourteenth Amendment claim and such failure acts as a waiver.

Cantwell admits he removed Plaintiff's bedding to "to gain her compliance to receive medical attention."  (ECF # 28-1 page ID 122).  A jury hearing such testimony could find that Cantwell's actions were intended to punish Plaintiff for her lawful refusal to submit to some of the medical questions.  Moreover, disputed issues of fact exist as to whether Cantwell asked Plaintiff to get up before removing the bedding.  It is undisputed that Cantwell was found to have violated LCSO's rules and was reprimanded for his actions.

Plaintiff further argues that Defendants are not entitled to qualified immunity where the evidence shows Cantwell clearly violated Plaintiff's Fourteenth Amendment right to be free from excessive force that amounts to punishment and that right has been clearly established.

7

Furthermore, Defendant Ables had a duty to prevent Cantwell's use of excessive force.  Plaintiff argues that Defendant Ables admittedly found Plaintiff to be abrasive and uncooperative.  Ables further gave conflicting testimony whether she heard Cantwell ask Plaintiff for the blanket as he followed her into the cell.   Regardless, Plaintiff asserts that Ables knew that excessive force was likely to be used given Plaintiff's lack of cooperation and resistance, yet did nothing to prevent it. In fact, Ables created the situation by insisting on obtaining the medical information from Plaintiff despite Sergeant Frizzell's instruction that Plaintiff did not have to answer personal medical questions.

Although the arresting officers have been dismissed from the case, Plaintiff contends she can still maintain a Fourth Amendment False Imprisonment claim against Defendants because she was detained on a non-jailable offense of which Defendants knew but detained her nonetheless.  As a result, Defendants are not entitled to summary judgment on Plaintiff's First, Third and Fourth causes of action.

Plaintiff also argues that judgment is not warranted on her state law claims as Defendants primary argument is that no constitutional violation occurred.  However, as argued above, Plaintiff has shown genuine issues of material fact support denying summary judgment, thus, her state law claims survive as well.  Also, the video evidence clearly supports an Assault and Battery claim and Cantwell's conduct, when viewed in a light most favorable to Plaintiff, shows bad faith, malice, or recklessness that is sufficient to overcome state law immunity.

Regarding her *Monell* claim against LCSO, Plaintiff alleges that Cantwell's conduct was not a single event but was a continuous string of misconduct that led to the Fourteenth Amendment violation.  Moreover, Cantwell's conduct, including his insistence that Plaintiff

comply with medical intake, demonstrates a lack of training as was the taking of her bedding.

## LAW AND ANALYSIS

### Standard of Review

Summary judgment shall be granted only if  "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See*

Fed. R. Civ. P. 56(a).  The burden is on the moving party to conclusively show no genuine issue

of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc.*

*v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).  The moving party must either point to "particular

parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other

materials" or show "that the materials cited do not establish the absence or presence of a genuine

dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See*

Fed. R. Civ. P. 56(c)(1)(A), (B).  A court considering a motion for summary judgment must view

the facts and all inferences in the light most favorable to the nonmoving party.  *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  Once the movant presents evidence

to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward

with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing*

*Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine

issues of material fact.  *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996);

*Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992).  The burden

falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v.*

9

*Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**<u>Dismissal for Failure to Prosecute</u>**

Rule 41(b) allows courts to dismiss claims "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order." Fed. R. Civ. P. 41(b). Nevertheless, "[t]he dismissal of a claim for failure to prosecute is a harsh sanction which the court should order only in extreme situations showing a clear record of contumacious conduct by the plaintiff." *Wu v. T.W. Wang*, 420 F.3d 641,643 (6th Cir. 2005). "When considering whether dismissal is appropriate under this rule, the Court should consider the following four factors: (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." *A.V. by & through T.V. v. Bd. of Educ. of Fayette Cnty., Kentucky,* 342 F.R.D. 331, 334 (E.D. Ky. 2022) quoting *Schafer v. City of Defiance Police Dep't,* 529 F.3d 731, 737 (6th Cir. 2008).

The Court agrees with Plaintiff that her conduct in discovery does not warrant dismissal. There does not appear to be any bad faith or fault in her decision not to take discovery. Instead,

Plaintiff made a tactical decision and, because the incident is captured on camera, much of the typical discovery was unnecessary as the facts are largely undisputed. Nor can Defendants show prejudice as Plaintiff complied with Defendants' discovery requests and Defendants never complained about an inability to obtain the same during the discovery period. Because there was no motion to compel nor for sanctions by Defendants, there has not been any cause for the Court to issue a warning to Plaintiff about her discovery conduct. Plaintiff's decision not to pursue any discovery here does not warrant any sanction, let alone some lesser sanction than dismissal. Consequently, the four factors above do not support dismissal and the Court denies Defendants' Motion based on a Rule 41(b) sanction for failure to prosecute.

**<u>Sui Juris</u>**

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws ..." To establish a claim under § 1983, plaintiff must prove that "(1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Nerswick v. CSX Transp., Inc.,* 692 F. Supp. 2d 866, 878 (S.D. Ohio 2010), aff'd, 441 F. App'x 320 (6th Cir. 2011) quoting *Berger v. City of Mayfield Heights,* 265 F.3d 399, 405 (6th Cir.2001).)

Plaintiff's Complaint names the LCSO as a Defendant and asserts several claims, including a § 1983 claim for *Monell* liability against LCSO. However, under Ohio law, "a county sheriff's department is not a legal entity subject to suit." *Rankins v. Cuyahoga Cnty. Sheriff's Dep't,* No. 1:23-CV-177, 2025 WL 332309, at *1 (N.D. Ohio Jan. 29, 2025) quoting *Carmichael v. City of Cleveland,* 881 F. Supp. 2d 833, 841 (N.D. Ohio Apr. 30, 2012); aff'd by *Carmichael v. City of Cleveland,* 571 F. App'x 426, 435 (6th Cir. 2014); see also *Petty v. Cnty.*

11

*Of Franklin,* 478 F.3d 341, 347 (6th Cir. 2007) ("[A] county sheriff's office is not a legal entity capable of being sued for purposes of § 1983.").   In fact, a court within this district  has expressly held "the Lorain County Sheriff's Office is not 'sui juris.'"   *Lassen v. Lorain Cnty., Ohio,* No. 1:13 CV 1938, 2014 WL 3511010, at *7 (N.D. Ohio July 14, 2014) citing *Morales v. Franklin Cnty. Sheriffs,* 2013 WL 5492293 (S.D. Ohio Oct.2, 2013).

Defendants did not make this argument on summary judgment although they did list it in their Affirmative Defenses.  In such situations Fed.  R.  Civ.  P.  56(f) applies.  That Rule reads,

> (f) Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

Thus, pursuant to Rule 56(f), the Court orders the parties to respond no later than October 24, 2025 why judgment should not be granted for Defendants on all claims against the Lorain County Sheriff's Office.

## Count One Civil Rights Violation under § 1983

In her Complaint at Count One, Plaintiff alleges the conduct of the arresting and subsequently dismissed Elyria police officers in arresting her on a non-jailable offense under O.R.C. § 2917.11 without probable cause, resulted in their liability for wrongful imprisonment. Then, in a catchall ending paragraph at ¶ 49 she writes, "[t]he actions of Defendants Cantwell, Ables and LCSO and each of them, were either intentional, malicious, willful, oppressive and in deliberate disregard for the rights of Plaintiff..."

Plaintiff's claim at Count One does not allege facts against Ables and Cantwell.  In the absence of such, this claim does not appear directed against Ables and Cantwell and Defendants

are entitled to summary judgment on the same.

**Count Two Failure to Train**

In light of the fact that Lorain County Sheriff's Office is not sui juris, the Court will grant

summary judgment for Defendants absent a suitable explanation from Plaintiff as ordered by the

Court.[1]

**Count Three False Arrest /Imprisonment**

---

[1]  Plaintiff's Complaint alleges claims against Cantwell and Ablies in their indiviudal and official capacities.  "On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. See, e.g., *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a " 'moving force' " behind the deprivation, *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981) (quoting *Monell,* supra, 436 U.S., at 694, 98 S.Ct., at 2037); thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law."  *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985).   Thus, although Plaintiff did not name Lorain County as a Defendant but only the LCSO, the official capacity claim could implicate Lorain County.

"[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). This means that "a municipality can be liable under § 1983 only where its policies are the 'moving force behind the constitutional violation.'"  *Id*. at 389 (quoting *Monell*, 436 U.S. at 694). "Municipal liability must rest on a direct causal connection between the policies or customs of the city and the constitutional injury to the plaintiff; '*respondeat superior* or vicarious liability will not attach under § 1983.'"  *Gray v. City of Detroit*, 399 F.3d 612, 617 (6th Cir. 2005) (quoting *Harris*, 489 U.S. at 385).

The Sixth Circuit has recognized four means by which a plaintiff may show that the municipality's policies or customs were connected to the constitutional violation: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations."  *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019).

Because Plaintiff failed to take any discovery she cannot meet her burden to show that Defendants' acts were the result of a policy or custom.  In fact, the only evidence before the Court shows that Cantwell was reprimanded for his conduct for violating LCSO policy.  In the absence of any evidence pointing to a specific policy or custom that was the driving force behind Cantwell's conduct, or any evidence that a decision maker ratified such conduct, Plaintiff has not met her burden to show Lorain County is liable under an official capacity theory.

At Count Three of her Complaint, Plaintiff alleges that Defendants Ables and Cantwell "continued to hold Plaintiff in the County Jail despite the fact that her charge was a minor misdemeanor..."  While Plaintiff's Complaint expressly alleges § 1983 claims at Count One, Two, Four, Nine and Ten, Count Three False Arrest and False Imprisonment does not. Therefore, Plaintiff's claim at Count Three will be considered a claim under Ohio law.

Under Ohio law, "a claim for false imprisonment and a claim for false arrest require proof of the same essential elements." *Nerswick v. CSX Transp., Inc.,* 692 F. Supp. 2d 866, 882 (S.D. Ohio 2010), aff'd, 441 F. App'x 320 (6th Cir. 2011) (citing *Evans v. Smith,* 97 Ohio App.3d 59, 646 N.E.2d 217, 225 (1994)).  Each requires proof that the defendant intentionally confined the plaintiff "within a limited area, for any appreciable time, against his will and without lawful justification." *Evans,* 97 Ohio App.3d at 70.

Here, Plaintiff was arrested by Elyria police officers for violating O.R.C. § 2917.11(B) which reads in pertinent part:

> (B) No person, while voluntarily intoxicated, shall do either of the following:
> (1) In a public place or in the presence of two or more persons, engage in conduct likely to be offensive or to cause inconvenience, annoyance, or alarm to persons of ordinary sensibilities, which conduct the offender, if the offender were not intoxicated, should know is likely to have that effect on others;
> (2) Engage in conduct or create a condition that presents a risk of physical harm to the offender or another, or to the property of another.
> ...
> (D) If a person appears to an ordinary observer to be intoxicated, it is probable cause to believe that person is voluntarily intoxicated for purposes of division (B) of this section.
> (E)(1) Whoever violates this section is guilty of disorderly conduct.
> (2) Except as otherwise provided in divisions (E)(3) and (4) of this section, disorderly conduct is a minor misdemeanor.

Ohio Rev. Code Ann. § 2917.11 (West).

Plaintiff was subsequently convicted of the Disorderly Conduct and issued a fine.  That

14

decision is final.  Moreover, Plaintiff has dismissed her claims against the arresting officers so she cannot show her arrest was unlawful or lacked probable cause.  Neither Cantwell nor Ables were present nor participated in Plaintiff's arrest.  Instead, Plaintiff's sole support for her false imprisonment claim is that O.R.C. § 2917.11 is a minor misdemeanor that is a non-jailable offense.

Ohio law permits an officer to place an intoxicated person in custody when they present a danger to others or themselves.  "First, the duty to arrest a person for disorderly conduct while intoxicated is necessarily discretionary.  R.C. § 2917.11(B)(2) requires that a police officer assess the condition of the intoxicated person and determine whether his condition poses a risk of harm to himself or others." *Knapp v. Gurish*, 44 Ohio App. 3d 57, 58, 541 N.E.2d 121, 123 (1989). Plaintiff has dismissed her claims against the arresting officers, therefore, there is no dispute that the officers had probable cause to arrest her as she admits she was intoxicated at the time of arrest and when she arrived at the Lorain County Jail.  As such, her sole argument against Cantwell and Ables  that they should have known she was held on a non-jailable offense fails as Ohio law permits detention for violations of § 2917.11.  In the absence of any evidence that Cantwell or Ables possessed some greater knowledge of Plaintiff's innocence or that the arrest lacked probable cause, her claim fails and Defendants are entitled to summary judgment on Count Three of her Complaint.

**Count Four § 1983 Unreasonable Seizure in Violation of the Fourth Amendment**

Plaintiff alleges she was unlawfully detained without probable cause in violation of the Fourth Amendment and this claim is brought against all Defendants.  Again, the Elyria defendants who arrested Plaintiff have all been dismissed and the Court has determined that the

15

Lorain County Sheriff's Office is not sui juris.  This leave only Ables and Cantwell as Defendants.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable ... seizures." *Brendlin v. California*, 551 U.S. 249, 254, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). ("A person is seized" whenever officials "restrain[ ] his freedom of movement" such that he is "not free to leave"). *Bailey v. United States,* 568 U.S. 186, 192, 133 S.Ct. 1031, 185 L.Ed.2d 19 (2013).  ( "[T]he general rule [is] that Fourth Amendment seizures are 'reasonable' only if based on probable cause to believe that the individual has committed a crime").."  The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause." *Manuel v. City of Joliet, Ill.,* 580 U.S. 357, 367, 137 S. Ct. 911, 918, 197 L. Ed. 2d 312 (2017).  *Burley v. Gagacki,* 729 F.3d 610, 619 (6th Cir. 2013) ("To establish liability against an individual defendant acting under color of state law, a plaintiff must show that the defendant was 'personally involved' in [unlawful conduct]." *Tlapanco v. Elges,* 969 F.3d 638, 656 (6th Cir. 2020).

Similar to her Ohio law claim, Plaintiff has dismissed out the arresting officers, therefore, she cannot show her initial arrest lacked probable cause.  Moreover, she offers no evidence that her one day detention at the Lorain County Jail was unlawful where it is undisputed she was arrested for Disorderly Conduct- Intoxication; she admits she was intoxicated at the time of the arrest and when she initially presented at the Lorain County Jail.  Moreover, Ohio law permits detention of intoxicated individuals who present a danger to themselves or others.   In the absence of any evidence that Ables and Cantwell knew her arrest and detention were unlawful, her claim fails against these Defendants and they are entitled to summary judgment.

16

**Count Five Assault and Battery**

Plaintiff's Assault and Battery Claim is brought solely against Cantwell for his pulling her bedding out from beneath her causing her to flip onto her shoulder, resulting in her injury. "[T]he tort of assault is defined as the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact. The threat or attempt must be coupled with a definitive act by one who has the apparent ability to do the harm or to commit the offensive touching. An essential element of the tort of assault is that the actor knew with substantial certainty that his or her act would bring about harmful or offensive contact." *Smith v. John Deere Co.*, 83 Ohio App.3d 398, 406, 614 N.E.2d 1148 (1993).

"A person is subject to liability for battery when he acts intending to cause a harmful or offensive contact, and when a harmful contact results. Contact which is offensive to a reasonable sense of personal dignity is offensive contact." *Love v. City of Port Clinton,* 37 Ohio St.3d 98, 99, 524 N.E.2d 166 (1988) (citing *852 Restatement (Second) of Torts §§ 19, 25 (1965)). "In order that a contact be offensive to a reasonable sense of personal dignity, it must be one which would offend the ordinary person and as such one not unduly sensitive as to his personal dignity. It must, therefore, be a contact which is unwarranted by the social usages prevalent at the time and place at which it is inflicted." *Restatement (Second) of Torts* § 19. "Intent is an essential element of both torts. Liability for assault requires that the actor actually intend to place another in apprehension of a harmful or offensive contact." *Gerber v. Veltri,* 203 F. Supp. 3d 846, 851–52 (N.D. Ohio 2016), aff'd, 702 F. App'x 423 (6th Cir. 2017).

Here, genuine issues of fact preclude summary judgment for Cantwell on Plaintiff's Assault and Battery claim. The video tape shows Cantwell follow Plaintiff in to her cell and

forcibly remove her bedding while Plaintiff was sitting on it, causing her to roll backwards and onto her shoulder causing her alleged injury. In the absence of audio for the video the parties present conflicting testimony whether Cantwell told Plaintiff he was taking the bedding before she sat down on it. Moreover, the video shows Cantwell knew Plaintiff was sitting on the bedding when he pulled it out from under her. Therefore, because the video shows Cantwell pulled the bedding from beneath Plaintiff while she sat on it, a jury must determine whether his actions were intentional and constitute an assault and battery under Ohio law. As a result, Defendants' Motion is denied on Plaintiff's Assault and Battery claim against Cantwell.

## Counts Six, Seven and Eight Intentional, Reckless and Negligent Infliction of Emotional Distress

Plaintiff asserts that Cantwell and Ables both caused her emotional distress. Cantwell, by pulling the bedding out from beneath her and Ables, by asking Plaintiff personal medical questions in front of other detainees.

In Ohio, "a plaintiff alleging intentional infliction of emotional distress must show: (1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it." *Talley v. Fam. Dollar Stores of Ohio, Inc*., 542 F.3d 1099, 1110 (6th Cir. 2008). "Whether conduct is extreme and outrageous is initially a question of law for the court." *Morrow v. Reminger & Reminger Co.,*

*L.P.A.,* 2009-Ohio-2665, ¶ 48, 183 Ohio App.3d 40, 915 N.E.2d 696. "It is not enough that a defendant 'acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress.'" *Ritter v. Bd. of Educ. of Arcadia Loc. Sch.,* 535 F. Supp. 3d 690, 696 (N.D. Ohio 2021) quoting *Yeager v. Loc. Union* 20, 6 Ohio St. 3d 369, 374, 453 N.E.2d 666 (1983)). The conduct at issue must be "atrocious" and "utterly intolerable." *Id.*

"Under Ohio law, reckless infliction of emotional distress and intentional infliction of emotional distress are the same cause of action." *Hunt v. City of Toledo L. Dep't,* 881 F. Supp. 2d 854, 886 (N.D. Ohio 2012).

Given this high bar, the Court finds the videotape evidence does not support an intentional infliction of emotional distress claim. Pulling bedding out from beneath Plaintiff while she was seated on the floor, while arguably offensive, does not rise to the level of extreme or outrageous conduct. Moreover, Plaintiff points the Court to no evidence of her suffering severe emotional distress either from her own testimony or established by her medical records. Her sole evidence is her testimony on deposition that "they knew I was upset. They knew that I was emotionally distraught. And they seem to consider emotionally distressed as argumentative and combative. How about you're just emotionally stressing me out." (ECF # 29-1 pgID 249). This testimony does not support the high bar required for an intentional or reckless infliction of emotional distress claim. Consequently, the Court grants summary judgment for Defendants on these claims.

In Ohio, a plaintiff cannot state a claim for negligent infliction of emotional distress except in very narrow circumstances." *Ritter,* 535 F. Supp. 3d at 695 (N.D. Ohio 2021). Recovery is limited to situations where the plaintiff has "witnessed or experienced a dangerous

19

accident or was subjected to an actual physical peril." *Inskeep v. W. Res. Transit Auth.,* 2013-Ohio-897, ¶ 25, 2013 WL 979054 (Ohio App. 7 Dist.).

Under Ohio law, a plaintiff can recover for negligent infliction of emotional distress where such injuries are both serious and reasonably foreseeable. *Paugh v. Hanks,* 6 Ohio St.3d 72, 451 N.E.2d 759, 765 (1983). An emotional injury is serious where "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Id.* Ohio courts have narrowly limited the scope of negligent infliction of emotional distress claims. "Ohio courts have limited recovery for claims alleging negligent infliction of emotional distress to situations such as where the plaintiff was a bystander to an accident or was in fear of physical consequences to his own person." *Dodge v. United States,* 162 F. Supp. 2d 873, 879 (S.D. Ohio 2001) citing *Gearing v. Nationwide Ins. Co.,* 76 Ohio St.3d 34, 40, 665 N.E.2d 1115, 1120 (1996). "A plaintiff may only recover for emotional harm negligently inflicted by a defendant by instituting a "traditional" claim for negligent infliction of emotional distress. The plaintiff will then be required to show that he or she (1) was a bystander to an accident, (2) reasonably appreciated the peril thereof, and (3) suffered serious and foreseeable emotional distress as a result of his cognizance or fear of the peril. *Paugh,* paragraphs three and four of the syllabus. *Tschantz v. Ferguson,* 97 Ohio App.3d 693, 714, 647 N.E.2d 507, 521 (1994).

Here, Plaintiff's claims do not stem from having witnessed an accident, nor are they sufficiently related to the same such that she can overcome summary judgment. See *Thatcher v. Goodwill Indus. of Akron,* 117 Ohio App.3d 525, 542, 690 N.E.2d 1320, 1331 (1997). ("The tort of negligent infliction of emotional distress assumes that a bystander or witness to a sudden,

20

negligently caused event is traumatized by its emotionally distressing occurrence."). Moreover, a claim of negligent infliction of emotional distress does not apply where the alleged tortious conduct is of an intentional nature. *Haller v. Phillips,* 69 Ohio App.3d 574, 579, 591 N.E.2d 305, 308 (1990).

Here, Plaintiff was not a witness to an accident and has not shown she was in fear of physical peril prior to the pulling of her bedding or from being asked personal medical questions. Finally, Plaintiff's Complaint expressly alleges and Plaintiff testified, that Cantwell acted intentionally in removing her bedding and as such his conduct would not support a negligent infliction of emotional distress claim.

Lastly, there is no evidence that Ables acted maliciously or in bad faith so as to take her conduct outside the immunity offered under § 2744 for employees whose negligent acts cause injury. There is no dispute that Ables asking Plaintiff medical questions as part of her intake duties was an act within the scope of her employment and many of those questions were mandated by statute.

For the foregoing reasons, the Court grants summary judgment for Defendants on Plaintiff's emotional distress torts at Counts Six, Seven and Eight of her Complaint.

**Count Nine Excessive Force** under 1983

Plaintiff brings her Excessive Force claim under the Eighth and Fourteenth Amendment solely against Cantwell for his forcible removing of her bedding. Because the Eighth Amendment applies solely to convicted prisoners, the Court's analysis will be limited to excessive force claims under the Fourteenth Amendment. See *Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 537 (6th Cir. 2015).

21

The United States Supreme Court has held that a pretrial detainee has a right to be free from excessive force under the Fourteenth Amendment.   According to the Supreme Court, when assessing pretrial detainees' excessive force claims the court must inquire into whether the plaintiff shows "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson,* 576 U.S. 389, 397, 135 S.Ct. 2466, 2473, 192 L.Ed.2d 416 (2015).  The Court, in its highly fact-specific inquiry, must account for the "perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.*   And account for "the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' " *id.*, and defer when appropriate to " 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.' " *Id.* (quoting *Bell v. Wolfish,* 441 U.S. 520, 540, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)).

The Supreme Court gave the following list of factors for a court to consider in assessing the reasonableness of the force applied:

"(1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting." *Id*.  This list is not exclusive.

 As the Sixth Circuit noted, "*Kingsley* also reaffirms that pretrial detainees cannot be subjected to the use of excessive force that amounts to punishment, precisely because they "cannot be punished at all." *Coley v. Lucas Cnty., Ohio, 799* F.3d 530, 538 (6th Cir.

2015)(internal citations omitted).

A plaintiff may "allege use of excessive force even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage." *Ingram v. City of Columbus,* 185 F.3d 579, 597 (6th Cir.1999). "[T]he 'extent of the injury inflicted' is not 'crucial to an analysis of a claim for excessive force in violation of the Fourth Amendment.' " *Morrison v. Bd. of Tr. of Green Twp.,* 583 F.3d 394, 407 (6th Cir.2009). "Moreover, we look primarily to whether gratuitous force was applied." *Coley,* 799 F.3d at 539.

An "arrest need not be an assault for it to be actionable under § 1983." *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005)) abrogated on other grounds). "[T]he question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor,* 490 U.S. 386, 397, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989). There "must be a causal connection between the defendant's active unconstitutional behavior and the plaintiff's injuries." *Crawford v. Tilley,* 15 F.4th 752, 762 (6th Cir. 2021).

Based on the videotape evidence and disputed testimony regarding what was said or unsaid between Plaintiff and Cantwell prior to his removal of her bedding, a jury could find Cantwell's actions amount to excessive force. Cantwell clearly acted intentionally in forcibly removing the bedding while Plaintiff sat upon it. A review of the factors demonstrates a jury could find Cantwell's actions unreasonable as Plaintiff does not appear to be actively resisting, the force applied seems unnecessary to remove the bedding and could have been done when plaintiff was questioned by Ables. There is no evidence that Plaintiff presented a threat, nor does the evidence support that Cantwell perceived her as a threat. Instead, a jury could find

23

Cantwell's actions were gratuitous and intended as a punishment.

Therefore, the Court finds Plaintiff has submitted sufficient evidence to defeat Defendants' Motion for Summary Judgment on her Excessive Force claim.

## Qualified Immunity

Although she has demonstrated sufficient facts on her Excessive Force claim, Defendants claim they are immune from liability. Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "Created to protect government officials from interference with their official duties, qualified immunity 'is an immunity from suit rather than a mere defense to liability.'" *Barton v. Martin,* 949 F.3d 938, 947 (6th Cir. 2020) quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). It allows police officers "breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims,* 571 U.S. 3, 6, 134 S.Ct. 3, 187 L.Ed.2d 341 (2013) (per curiam) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 743, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)).

"Qualified immunity involves a two-step inquiry, and courts exercise discretion in deciding in what order to address the questions." *Barton*, 949 F.3d 947–48 citing *Pearson v. Callahan,* 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). "First, viewing the facts in the light most favorable to the plaintiff, the court must determine whether the officer committed a constitutional violation." *Barton* 949 F.3d at 947. "Second, if there is a constitutional violation,

24

the court must determine whether that constitutional right was clearly established at the time of the incident." *Id.*  A right is clearly established when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Morrison v. Bd. of Trs. of Green Twp.,* 583 F.3d 394, 400 (6th Cir. 2009) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).  "While there need not be 'a case directly on point' for the law to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Barton* at 947 quoting *Ashcroft*, 563 U.S. at 741, 131 S.Ct. 2074.

"Clearly established" means that "existing precedent" puts the "constitutional question beyond debate." *City & County of San Francisco v. Sheehan,* 575 U.S. 600, 135 S. Ct. 1765, 1774, 191 L.Ed.2d 856 (2015) (quotation omitted).  "In the light cast by "pre-existing law," "the unlawfulness must be apparent." *White v. Pauly,* 580 U.S. 73, 137 S. Ct. 548, 552, 196 L.Ed.2d 463 (2017) (quotation omitted).  That is an "exacting standard." *Sheehan,* 135 S. Ct. at 1774. "General excessive force principles, without more, may clearly establish a behavior's unlawfulness only in the most "obvious" cases." *Jones v. City of Detroit, Michigan,* 815 F. App'x 995, 997 (6th Cir. 2020*) citing White,* 137 S. Ct. at 552.  "In all other cases, especially those present[ing] a unique set of facts and circumstances, courts must identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated the Fourth Amendment." *Jones* at 815 F.  App'x.  997.

While a close call and in the absence of any caselaw that presents sufficiently similar facts, the Court finds Cantwell is not entitled to qualified immunity.  First, a jury could find his actions were intended to punish Plaintiff for her refusal to comply with the medical intake exam.

(ECF# 28-2 PageID#166).   The United States Supreme Court has held "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham*, 490 U.S. at 395 n.10 (citing *Bell*, 441 U.S. at 535–539).

Second, from the videotape the jury could conclude Cantwell's actions were unreasonable, gratuitous and reasonably certain to cause injury.  To determine whether an action is a permissible restraint or an impermissible punitive measure, courts consider whether there is "objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley v. Hendrickson,* 135 S. Ct. 2466, 2473–74 (2015).  Here, the evidence supports that a jury could find Cantwell's conduct in removing Plaintiff's bedding causing her injury to be punitive.

Finally, an appellate court has held that an officer that pushes a detainee to the ground with sufficient force to cause injury was a clearly established violation of the detainee's constitutional right.  *See Quinette v. Reed,* 805 F. App'x 696, 704 (11th Cir. 2020) ("we conclude that at the time of the incident in this case the defendants were on notice that applying force on a non-resisting pretrial detainee violate[d] clear federal law.").

Here, Plaintiff was a non-resisting detainee and Cantwell forcibly removed her bedding from beneath her causing her to fall on the ground with sufficient force to cause her injury.  Moreover, his actions could be found to have been a punishment to Plaintiff for her failure to comply with the medical intake questions.  Thus, common sense and the analogous use of force causing a non resisting detainee to fall supports a finding that Cantwell violated a clearly established right.

In light of the above reasons, the Court finds a jury could find Cantwell's actions

26

unreasonable and caselaw clearly established that his actions violated Plaintiff's constitutional rights, therefore, Cantwell is not entitled to qualified immunity on Plaintiff's excessive force claim.

**Count Ten Failure to Prevent Use of Excessive Force Under Eighth Amendment**

Plaintiff's last claim is brought against Ables for her alleged failure to prevent Cantwell's use of excessive force.  According to her Complaint, Ables had the opportunity to prevent the use of excessive force from occurring but failed to intervene.

An officer may be liable for failing to prevent an act of excessive force if he or she: "(1) observed or had reason to know that excessive force would be or was being used, and (2) had both the opportunity and means to prevent the harm from occurring.  Where an act of excessive force unfolds in a matter of seconds, the second requirement is generally not satisfied." *Pennington v. Terry*, 644 F. App'x 533, 547–48 (6th Cir. 2016).

The plain evidence from the videotape and deposition testimony demonstrates that Ables neither had reason to know that excessive force would be used nor the opportunity to prevent the harm from occurring.  Plaintiff testified that Cantwell said nothing before removing her bedding and there is no testimony from any witness that Cantwell indicated he was going to use force if necessary to extract the bedding.  Also, the video shows the excessive force occurred in seconds, leaving no time for Ables to intervene even had she observed the incident.  As a result, the Court finds Ables is entitled to summary judgment on Plaintiff's claim at Count Ten of her Complaint.

**Ohio Stautory Immunity**

Cantwell asserts he is immune from liability for Assault and Battery under Ohio's tort immunity statute.  As a general rule, political subdivisions and their employees are not liable for

27

injury caused by any action of the subdivision or its employees in connection with a

governmental function. Ohio Rev.Code § 2744.02(A)(1).  Ohio counties are statutorily defined as

political subdivisions. Ohio Rev.Code § 2744.01(F).   The operations of a jail are a governmental

function.   § 2744.01(C)(2)(h).  Ohio Rev.Code §§ 2744.02 and 2744.03 provide exceptions to

the general grant of immunity.

> Ohio Rev.Code § 2744.02(B) provides that political subdivisions, such as Lorain
> County, may be liable for injuries caused by: (1) operation of a motor vehicle
> (with some exceptions); (2) negligent performance of proprietary functions;  (3)
> failure to keep public roads in repair and free from nuisance; and (4) negligence of
> an employee that occurs within or on the grounds of buildings used in performing
> governmental functions. Further, political subdivisions may be liable if liability is
> imposed by statute. Ohio Rev.Code § 2744.02(B)(5). Section 2744.03 provides
> additional defenses and immunities when immunity is divested under §
> 2744.02(B). Section 2744.03(A) states, in pertinent part,
> (2) The political subdivision is immune from liability if the conduct of the
> employee involved, other than negligent conduct, that gave rise to the claim of
> liability was required by law or authorized by law, or if the conduct of the
> employee involved that gave rise to the claim of liability was necessary or
> essential to the exercise of powers of the political subdivision or employee.
> (3) The political subdivision is immune from liability if the action or failure to act
> by the employee involved that gave rise to the claim of liability was within the
> discretion of the employee with respect to policy-making, planning, or
> enforcement power by virtue of the duties and responsibilities of the office or
> position of the employee,
> (5) The political subdivision is immune from liability if the injury, death, or loss
> to persons or property resulted from the exercise of judgment or discretion in
> determining whether to acquire, or how to use, equipment, supplies, materials,
> personnel, facilities, and other resources, unless the judgment or discretion was
> exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
> Ohio Rev.Code §§ 2744.03(A)(2), (3), (5).

Ohio law does confer immunity upon a political subdivision for intentional torts. See

*Woods v. Miamisburg City Sch.,* 254 F. Supp. 2d 868, 879–82 (S.D. Ohio 2003) (political

subdivisions "particularly those acting in a governmental capacity, are exempt from intentional

tort claims.").  See *Culberson v. Doan,* 125 F.Supp.2d 252, 282 (S.D.Ohio 2000) ("we find that there are no statutory exceptions to political subdivision immunity for intentional torts, such as intentional infliction of emotional distress.").  See also  *Wynn v. Butler Cty. Sheriff's Dept.,* 1999 WL 160942 (Ohio App. 12th Dist. Mar 22, 1999) (county has statutory immunity for false imprisonment claim).   Here, because Plaintiff's Assault and Battery claim is an intentional tort, insofar as the Complaint alleges a claim against Lorain County (official capacity claim), Lorain County is immune under § 2744.02(B).  Accordingly, summary judgment for Defendants on Plaintiff's official capacity Assault and Battery is granted.

**Cantwell Individual Capacity Assault and Battery**

Ohio Rev.Code § 2744.03(A)(6) limits the immunity an employee of a political subdivision.  It provides, in pertinent part, that an employee is immune from liability unless:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
> (c) Liability is expressly imposed upon the employee by a section of the Revised Code. Id. § 2744.03(A)(6).

Here, Plaintiff has alleged that Cantwell actions were intentional, malicious, willful and wanton," within the meaning of § 2744.03(A)(6)(b).  Under Ohio law, " '[m]alicious' means 'indulging or exercising malice'; harboring ill will or enmity." *Teramano v. Teramano,* 6 Ohio St.2d 117, 118, 216 N.E.2d 375, 377 (Ohio 1966).  "Furthermore, 'malice' can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *Jackson v. Butler Cty. Bd. of City Comm'rs*, 76 Ohio App.3d 448, 453–54, 602 N.E.2d 363, 367 (Butler Cty.1991) (citing *Bush v.*

*Kelley's, Inc.*, 18 Ohio St.2d 89, 247 N.E.2d 745 (Ohio 1969)).  The Ohio Supreme Court has

held that "bad faith" requires "dishonest purpose, moral obliquity, conscious wrongdoing, breach

of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Slater*

*v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148, 187 N.E.2d 45 (Ohio 1962)(syllabus).

An individual is reckless "if he does an act or intentionally fails to do an act which it is

his duty to the other to do, knowing or having reason to know of facts which would lead a

reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm

to another, but also that such risk is substantially greater than that which is necessary to make his

conduct negligent."  53 Ohio St.3d 102, 104–5, 559 N.E.2d 705, 708 (Ohio 1990), quoting 2

*Restatement of the Law 2d, Torts* § 500 at 587 (1965).

Here, the Court finds Cantwell is not immune for the intentional tort of Assault and

Battery as the evidence is sufficient for a jury to find he acted in bad faith, recklessly or

maliciously in pulling the bedding from beneath Plaintiff while she sat upon it.

Therefore, for the foregoing reasons, the Court denies summary judgment for Defendant

Cantwell on Plaintiff's claims against him for Assault and Battery under Ohio law and Excessive

Force under the Fourteenth Amendment in his individual capacity alone.  The Court grants

summary judgment for Defendants on all remaining claims with the exception that Plaintiff shall

offer an explanation no later than October 24, 2025 and pursuant to Rule 56(f) why her claims

against LCSO survive summary judgment despite it not being sui juris.

IT IS SO ORDERED.

Date: October 15, 2025          /s/Christopher A. Boyko
                               CHRISTOPHER A. BOYKO
                               United States District Judge

31